Anna Belesiotis, CA SBN 272710
Assistant Federal Public Defender
Email: anna_belesiotis@fd.org
101 SW Main Street, Suite 1700
Portland, OR 97204
Tel: (503) 326-2123

Attorney for Mr. Rojo-Llamoza

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:25-cr-00114-SI-1 |
| Plaintiff, | |
| v. | DEFENDANT'S MOTION TO DISMISS THE INDICTMENT FOR VIOLATIONS OF SPEEDY TRIAL, RULE 5 AND THE FOURTH AMENDMENT, FOR DISCOVERY, AND FOR AN EVIDENTIARY HEARING |
| CESAR ANDRES ROJO-LLAMOZA, | |
| Defendant. | ***Evidentiary Hearing Requested*** |

# TABLE OF CONTENTS

**Page**

Table of Authorities ........................................................................................................ iii

I.      Introduction ........................................................................................................ 6

II.     Summary of Relevant Facts  ............................................................................... 6

III.    Argument ............................................................................................................ 9

        A.      The 45-day delay in charging Mr. Rojo-Llamoza violated the Speedy Trial
                Act. ........................................................................................................... 9

                1.      Mr. Rojo-Llamoza's arrest by immigration officers triggered the
                        Speedy Trial Act because the arrest was in connection with
                        criminal charges. ........................................................................... 9

                2.      The violations of Mr. Rojo-Llamoza's speedy trial rights warrant
                        dismissal with prejudice .............................................................. 12

        B.      The 46-day delay in charging and bringing Mr. Rojo-Llamoza before a
                magistrate judge violated Rule 5 and the Fourth Amendment, requiring
                dismissal or, alternatively, suppression of evidence. ............................. 15

                1.      The arresting agency violated Rule 5 by failing to promptly charge
                        Mr. Rojo-Llamoza or present him to a magistrate judge without
                        unnecessary delay. ....................................................................... 15

                2.      The government's prolonged pre-indictment delay violated Mr.
                        Rojo-Llamoza's Fourth Amendment right to a prompt judicial
                        determination of probable cause. ................................................. 21

                3.      The Rule 5 and Fourth Amendment violations should result in
                        dismissal of the indictment or, alternatively, suppression of
                        evidence. ..................................................................................... 22

IV.     Motion for Discovery ....................................................................................... 25

V.      Motion for Evidentiary Hearing ....................................................................... 29

VI.     Conclusion ........................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Brady v. Maryland*,
  373 U.S. 83 (1963) ............................................................................... 27, 28

*Cnty. of Riverside v. McLaughlin*,
  500 U.S. 44 (1991) ............................................................................... 15, 21

*Corley v. United States*,
  556 U.S. 303 (2009) ................................................................................. 16

*Gerstein v. Pugh*,
  420 U.S. 103 (1975) ................................................................................. 21

*Strickler v. Greene*,
  527 U.S. 263–82, (1999) .......................................................................... 27

*United States v. Barton*,
  995 F.2d 931 (9th Cir. 1993) ..................................................................... 28

*United States v. Budziak*,
  697 F.3d 1105 (9th Cir. 2013) ................................................................... 26

*United States v. Cabral*,
  No. C.R.98-10188-MLW, 1998 WL 1543567 (D. Mass. June 10, 1998) ........... 19, 19-20, 28

*United States v. Cepeda-Luna*,
  989 F.2d 353 (9th Cir. 1993) ........................................................... 9-10, 10, 11

*United States v. Contreras*,
  197 F. Supp. 2d 1173 (D. Iowa 2002) ................................................ 21-22, 22

*United States v. Dominguez-Caicedo*,
  40 F.4th 938 (9th Cir. 2022) ..................................................................... 23

*United States v. Fort*,
  472 F.3d 1106 (9th Cir. 2007) ................................................................... 26

*United States v. Gamez*,
  301 F.3d 1138 (9th Cir. 2002) ............................................................... 16-17

*United States v. Gamez-Orduño*,
  235 F.3d 453 (9th Cir. 2000) ................................................................. 27, 28

*United States v. Gowadia,*
    760 F.3d 989 (9th Cir. 2014) ........................................................... 16

*United States v. Jernigan,*
    582 F.2d 1211 (9th Cir. 1978) ................................................... 22, 23

*United States v. John Doe,*
    705 F.3d 1134 (2013) ..................................................................... 26

*United States v. Liera,*
    585 F.3d 1237 (9th Cir. 2009) ............................................. 16, 17, 18

*United Sates v. Mandel,*
    914 F.2d 1215 (9th Cir. 1990) ........................................................ 26

*United States v. Matta-Ballesteros,*
    71 F.3d 754 (9th Cir. 1995) ............................................................ 24

*United States v. Mayes,*
    417 F.2d 771 (9th Cir. 1969) .......................................................... 17

*United States v. Mejia Hernandez,*
    No. CR 18-0588 FMO, 2020 WL 1181495 (C.D. Cal. Feb. 20, 2020) ................................. 24

*United States v. Pimental,*
    755 F.3d 1095 (9th Cir. 2014) ........................................... 16, 17, 18, 24

*United States v. Okuda,*
    675 F. Supp. 1552 (D. Haw. 1987) ............................................. 10, 11

*United States v. Osunde,*
    638 F. Supp. 171 (N.D. Cal. 1986) ................................................. 23

*United States v. Prieto-Villa,*
    910 F.2d 601 (9th Cir. 1990) .......................................................... 29

*United States v. Restrepo,*
    59 F. Supp. 2d 133 (D. Mass. 1999) ....................................... 11, 12, 20

*United States v. Reme,*
    738 F.2d 1156 (11th Cir. 1984) ...................................................... 10

*United States v. Sotoj-Lopez*
    603 F.2d 789 (9th Cir. 1979) ............................................... 19, 20, 21

*United States v. Stever,*
    603 F.3d 747 (9th Cir. 2010) .......................................................... 26

*United States v. Taylor,*
   487 U.S. 326 (1988) ........................................................................... 12

*United States v. Valenzuela-Espinoza,*
   697 F.3d 742 (9th Cir. 2012) ...................................................... 16, 17

*Waller v. Georgia,*
   467 U.S. 39 (1984) ........................................................................... 29

*Zavala v. Ives,*
   785 F.3d 367 (9th Cir. 2015) ...........................................................24

## STATUTES

8 U.S.C § 1326 .......................................................................................... 11

8 U.S.C. § 1357 ................................................................................... 16, 20

18 U.S.C. § 3161 .................................................................................... 9, 15

18 U.S.C. § 3162 ...................................................................................... 12

## RULES

Fed. R. Crim. P. 12 ................................................................................. 29

Fed. R. Evid. 401 ................................................................................... 25

Fed. R. Crim. P. 5 ........................... 6, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 26, 29

Fed. R. Crim. P. 16 ................................................................................. 26

Fed. R. Crim. P. 50 ................................................................................. 14

## OTHER

U.S. Const. amend. IV..................................................6, 15, 21, 22, 24, 25, 27, 29

U.S. Const. amend. VI.............................................................. 13, 14, 15, 29

## I.    Introduction

The Constitution, federal statues, and the Federal Rules of Criminal Procedure all require that an individual subject to a warrantless arrest be promptly charged and brought before a judge to ensure that the detention is justified and to protect the individual's rights. In this case, Mr. Rojo-Llamoza was held for 45 days after his warrantless arrest until he was charged.

Because Mr. Rojo-Llamoza was detained for 45 days after his warrantless arrest before he was charged, the delay in prosecution and presentment to court violated the Speedy Trial Act, Rule 5 of the Federal Rules of Criminal Procedure, and the Fourth Amendment, or, alternatively, the delay in prosecution violated due process. The Court should dismiss the indictment given the egregiousness of the violations or, at a minimum, suppress evidence improperly gained through the illegality. Mr. Rojo-Llamoza also asks this Court to compel additional discovery related to the arrest and order an evidentiary hearing on this motion.

## II.    Summary of Relevant Facts[1]

On September 10, 2024, an immigration judge in Louisiana ordered Mr. Rojo-Llamoza removed to Venezuela. Exhibit A at 2. Mr. Rojo-Llamoza was not physically removed from the country at that time. Rather, he was released on October 1, 2024, on supervision with a requirement that he wear a GPS tracking device on his ankle. *Id.*

On January 26, 2025, ICE Enforcement and Removal Operations officers received a list of individuals with final orders of removal—including Mr. Rojo-Llamoza—and issued an I-200

---

[1] The following facts are based on documents received in discovery and evidence defense anticipates being presented at the evidentiary hearing. The defense disputes the government's version of the facts set forth in the discovery.

Page 6    Defendant's Motion to Dismiss the Indictment, For Discovery, and For an Evidentiary Hearing

(Non-judicial Warrant of Arrest) for Mr. Rojo-Llamoza. *Id*. at 3. Early on the morning of February 2, 2025, ICE officers McCutcheon, Peay and Dietz went to Mr. Rojo-Llamoza's address in Portland, Oregon, to arrest him on the warrant. *Id*. at 3. The officers saw a male (Alvarao Leal) sitting in his car in the parking lot and asked him, "Are you Cesar?" Mr. Leal told them he was not and showed his identification. *Id*. Officers then walked to Mr. Rojo-Llamoza's apartment and knocked on the door. *Id*. Mr. Rojo-Llamoza's wife, Neicel Gauna, answered the door. *Id*. at 3. One of the officers relayed that they were there to remove Mr. Rojo-Llamoza's ankle bracelet. Although that claim was a ruse, it made sense to Ms. Gauna since her husband had just spoken with his supervision officer two days prior and provided his current address. The officers told Ms. Gauna to call Mr. Rojo-Llamoza on her phone to tell him to come to the door. His wife complied, and Mr. Rojo-Llamoza came to the front door from a side path next to the apartment. *Id*. at 3.

Officer McCutcheon confirmed Mr. Rojo-Llamoza's name and told him in English that he was under arrest. *Id*. Mr. Rojo-Llamoza, a Spanish-speaker, did not understand. Exhibit B (Mr. Rojo-Llamoza's declaration). Officer McCutcheon stood behind Mr. Rojo-Llamoza and grabbed both of his arms. All three officers forcibly pulled Mr. Rojo-Llamoza's arms behind him and began to put handcuffs on his wrists. *Id*. After handcuffing his left hand, Officer Dietz began hitting Mr. Rojo-Llamoza on his back and pushing him while yelling at him in English to walk forward. *Id*. Mr. Rojo-Llamoza told the officers in Spanish that this was causing him pain, but the officers ignored him. *Id*. As he was walking forward into the parking lot of the apartment complex, Mr. Rojo-Llamoza adjusted his shoulders to find a position that was not as painful to him, but when he did this, Officer McCutcheon wrapped his arms around Mr. Rojo-Llamoza in a

bear hug-type hold and tackled him to the ground. *Id*. Officer Peay was also holding onto Mr. Rojo-Llamoza and fell forward onto the ground with them. Exhibits C & D. While this was all taking place, Mr. Rojo-Llamoza's wife was standing directly in front of him and took out her phone to begin recording the incident on her phone. *Id*.

After falling forward onto the pavement, Mr. Rojo-Llamoza slowly made his way to his knees while his two younger children screamed "Daddy" "Daddy" from the doorway of the apartment. Exhibits B & C. Officers McCutcheon and Peay handcuffed Mr. Rojo-Llamoza's right wrist as they knelt on the ground behind him, and Officer Dietz kept one hand on Mr. Rojo-Llamoza's shoulder. *Id*. Mr. Rojo-Llamoza made his way to his feet along with McCutcheon and Peay. *Id*. Meanwhile, Mr. Leal held back Mr. Rojo-Llamoza's son, who was trying to break free to go help his father. *Id*. Ms. Gauna was still standing in front of Mr. Rojo-Llamoza and the three ICE officers. Officer Dietz grabbed her by the arm and pushed her aside. *Id*.

After taking Mr. Rojo-Llamoza to a police car, the agents transported him to the ICE office in Portland. Exhibit A at 3. Mr. Rojo-Llamoza was subsequently transported to Tacoma, WA to the immigration detention center facility. Because he had a prior order of removal, all that needed to be done was effectuate his removal, but instead he remained detained for 45 days. During these 45 days, Mr. Rojo-Llamoza had no idea that federal charges would be filed against him. He also suffered from nightmares of begin beaten by immigration officers and being deported back to Venezuela. At the immigration detention facility, ICE agents took his fingerprints and entered them into the Integrated Automated Fingerprint Identification System (IAFIS.) *Id*. They confirmed his identity and his immigration history. *Id*. Agent Dietz prepared the I-213 report on the date of Mr. Rojo-Llamoza's arrest (February 2, 2025) documenting the

alleged assaults on the ICE agents. Exhibit A. In addition to having all that was necessary to file charges, all three of the ICE agents submitted claims to the U.S. Department of Labor shortly after February 2, 2025. Agents Melvin Dietz and Juli Peay both filed their claims on February 3, 2025. Exhibit D. Agent Chatham McCutcheon filed his claim on February 7, 2025. Exhibit E.

On March 18, 2025, 45 days after his arrest, the government filed the present indictment, charging Mr. Rojo-Llamoza with three counts of assault on a federal officer. He made his initial appearance before a magistrate judge the next day. ECF 1, 6.

## III.    Argument

### A.    The 45-day delay in charging Mr. Rojo-Llamoza violated the Speedy Trial Act.

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Here, the Speedy Trial Act was triggered on February 2, 2025, the date of Mr. Rojo-Llamoza's arrest by ICE, when the facts underlying his charged assault occurred and the government agents began preparing for prosecution. Because he was not indicted within the thirty-day statutory time period, and because the delay was unjustified and impaired Mr. Rojo-Llamoza's defense, this Court should dismiss the case with prejudice.

#### 1.    Mr. Rojo-Llamoza's arrest by immigration officers triggered the Speedy Trial Act because the arrest was in connection with criminal charges.

The government cannot use immigration detention as a "mere ruse" to circumvent criminal procedural safeguards. *See, e.g.*, *United States v. Cepeda-Luna*, 989 F.2d 353, 358 (9th Cir. 1993) ("We . . . hold the Speedy Trial Act can be applied to civil detentions which are mere

ruses to detain a defendant for later criminal prosecution"). The requirements of the Speedy Trial Act "would lose all meaning if federal criminal authorities could collude with civil or state officials to have those authorities detain a defendant pending federal criminal charges solely for the purpose of bypassing the requirements of the Speedy Trial Act." *Id.* at 357.

In *United States v. Okuda*, the court found that the Speedy Trial Act was triggered on the date of the defendant's initial arrest for presenting a false visa, not the later date when a criminal complaint was filed. 675 F. Supp. 1552, 1553 (D. Haw. 1987). The defendant in *Okuda* was arrested "by both [immigration officers] and federal agents on the same charge, use of a false visa." *Id.* at 1555. The court rejected the government's argument that the criminal aspect of Okuda's arrest was merely "informal" until the later filing of the complaint, concluding that "[t]he critical issue is the substance of the restraint, not the semantical terminology," and Okuda had in fact been physically detained. *Id.* at 1554. The court also distinguished an Eleventh Circuit case in which the defendant's arrest solely for immigration violations did not trigger the Speedy Trial Act clock, reasoning that, in that case, the basis for criminal charges was only discovered later, through subsequent investigation. *Id.* at 1555 (discussing *United States v. Reme*, 738 F.2d 1156 (11th Cir. 1984)). By contrast, the court reasoned that the criminal and immigration charges against Okuda were identical. Thus, the government "had sufficient proof to indict the defendant on the identical criminal charge" from day one. *Id*. The Speedy Trial Act analysis in *Okunda* was anchored by the court's understanding that "the use of the I.N.S. as a substitute for criminal arrest is improper." *Id.* When the government uses immigration authorities to detain an individual, "knowing and intending that criminal charges will later be brought," the arrest triggers the Speedy Trial Act. *Id*.

In *Cepeda-Luna*, the Ninth Circuit expressly adopted the reasoning of *Okuda* and held that the Speedy Trial Act applies to civil detentions that are "mere ruses" to detain a defendant for later criminal prosecution. 989 F.2d at 357. The Ninth Circuit found there was no ruse in Mr. Cepeda-Luna's case. There, the defendant had been held on an immigration detainer for approximately three months following sentencing on a state criminal matter before being charged criminally with illegal reentry. *Id.* at 357-58. The agent testified that the delay was a result of a lack of communication between the county and immigration authorities. *Id.* at 357-58. Because there was no ruse to use to detain Mr. Cepeda-Luna under the immigration detainer while preparing for criminal prosecution, the court found no violation of the Speedy Trial Act.

By contrast, the district court in *United States v. Restrepo* applied *Cepeda-Luna*'s reasoning to grant Speedy Trial Act dismissal because, in that case, the government used the defendant's period in immigration detention to develop a criminal prosecution against him, not to effectuate his removal. 59 F. Supp. 2d 133, 137-39 (D. Mass. 1999). Restrepo was detained by immigration officials for a civil immigration offense—illegal reentry—and subsequently indicted for that offense's criminal analogue. *Id.* at 134-36. The day after his arrest, immigration officials reinstated Mr. Restrepo's prior order of removal, but also noted his eligibility for criminal prosecution in their paperwork. *Id.* at 135. Rather than effectuating Restrepo's removal, the agents obtained his fingerprints for analysis by the FBI. *Id.* at 136. For the next 39 days, there was no activity on Mr. Restrepo's case, as indicated by the "INS Investigation Workplan." *Id.* Then, the INS presented Mr. Restrepo's case to the U.S. Attorney's Office for consideration of prosecution under § 1326, and he was indicted 56 days after his arrest. *Id.* After an evidentiary hearing, the court concluded that immigration officials used the period of detention "to develop

the criminal case against him" rather than to remove him, and thus deemed the Speedy Trial

Act's 30-day clock to start on the date of the immigration arrest. *Id*. at 137-38.

This case is in line with *Okuda* and *Restrepo* and is distinguishable from *Cepeda-Luna*.

Just as in *Okuda* and *Restrepo*, immigration officials had all the information they needed to bring

criminal charges when they arrested Mr. Rojo-Llamoza on February 2, 2025. The agents' I-213

report documented all the details of Mr. Rojo-Llamoza's arrest, Exhibit A, and the agents had

submitted claims for their injuries to the U.S. Department of Labor within days of the arrest.

Exhibit E. No additional investigation was needed to file criminal charges. Moreover, just as in

*Restrepo,* the government here did nothing to effectuate Mr. Rojo-Llamoza's deportation during

the 45 days between his arrest and indictment, despite that they already had a reinstated final

order of removal ready to be executed. And unlike *Cepeda-Luna*, Mr. Rojo-Llamoza's case did

not merely fall through administrative cracks. Agents used the time he was detained to prepare

for criminal prosecution, but exceeded the 30 days that the Speedy Trial Act allows.

### 2. The violations of Mr. Rojo-Llamoza's speedy trial rights warrant dismissal with prejudice

The remedy for a violation of the Speedy Trial Act is dismissal with or without prejudice.

When determining whether to dismiss a case with or without prejudice, the statute directs courts

to consider various factors: "the seriousness of the offense; the facts and circumstances of the

case which led to the dismissal; and the impact of a reprosecution on the administration of this

chapter and on the administration of justice." 18 U.S.C. § 3162(a)(1)-(2). Courts should also

consider other, non-statutory factors, including the presence or absence of prejudice to the

defendant, the length of the delay, and the defendant's responsibility for the delay. *United States*

*v. Taylor*, 487 U.S. 326, 339-41 (1988).

Applying those factors here, dismissal with prejudice is warranted. To be sure, assault on a federal officer is a serious offense. However, Mr. Rojo-Llamoza's guideline range after trial is predicted to be either 24-30 months by the government's calculation, or 18-24 months by the defense's calculation, depending on whether a "bodily injury" enhancement is applied. Those ranges fall on the lower end of the Sentencing Guidelines Table, reflecting that the alleged crime is relatively less serious than many other federal prosecutions.

Moreover, Mr. Rojo-Llamoza cannot be faulted for any part of the government's delay in bringing forward an accusatory pleading. The government had everything required to prosecute Mr. Rojo-Llamoza from the day of his arrest by ICE on February 2, 2025, yet the government waited over six weeks to bring the charge while holding him in immigration custody. ECF 6.

Mr. Rojo-Llamoza also suffered prejudice from the delay due to the loss of exculpatory evidence. Mr. Rojo-Llamoza had visible injuries as a result of his encounter with the ICE officers. Exhibit B.  However, by the time he met with an attorney the morning of his initial appearance on March 20, 2025, those injuries were no longer visible. ECF 6; Exhibit F. The injuries were never documented by the government, nor did Mr. Rojo-Llamoza have the opportunity to be examined by a medical professional. Mr. Rojo-Llamoza thus lost valuable evidence that could have supported his defense that he was not the initial aggressor but was instead subject to the unlawful use of force by ICE agents.

Allowing reprosecution after dismissal in this case would also negatively impact the administration of justice by thwarting the goals of the Speedy Trial Act. Congress enacted the Speedy Trial Act in 1974 out of concern that Supreme Court precedent had failed to uphold Sixth Amendment protections. The House Report noted:

> The Committee finds that the adoption of speedy trial legislation is necessary in order to give real meaning to that Sixth Amendment right. Thus far, neither the decisions of the Supreme Court nor the implementation of Rule 50(b) of the Federal Rules of Criminal Procedure, concerning plans for achieving the prompt disposition of criminal cases, provides the courts with adequate guidance on this question.

H.R. Rep. No. 93-1508, 11, U.S. Code Cong. & Admin. News 1974, 7404-7405 (1974). The House and Senate Judiciary Committees understood that prosecutors would not be deterred from engaging in delayed prosecutions unless the remedy for violations of an accused's speedy trial rights was dismissal with prejudice: "The position taken here is that the only effective remedy for denial of speedy trial is absolute and complete discharge. . . . Prosecutors who are free to commence another prosecution later have not been deterred from undue delay." *Id.* at 37. The length of the delay—1.5 times the 30 days allotted by statute—suggests that no effort was made to comply with the statutory limit.

A dismissal without prejudice in this case would unfairly allow the government to reprosecute Mr. Rojo-Llamoza and would not deter the government from engaging in the same conduct with future cases. The government's use of ICE detention to hold an accused while the prosecution prepares for criminal prosecution appears to be a regular occurrence in the District of Oregon. *See United States v. Pablo-Morales* No. 3:25-cr-00095-IM-1, ECF 44 (defendant's motion to dismiss indictment on Rule 5 grounds where defendant indicted on the 30th day); *United States v. Vicente Canales-Cruz*, No. 3:25-cr-00100-IM (held in ICE custody and indicted on the 35th day); *United States v Alvarez-Archaga*, No. 3:25-cr-00082-AB (held in ICE custody and indicted on the 30th day); *United States v. Arrazola*-Mejia, No. 3:24-cr-00419 (held in ICE custody since 10/3/24, criminal complaint filed 10/17/24, and brought to court 10/30/24). The government's delay in indicting Mr. Rojo-Llamoza and bringing him to appear before a federal

Page 14  Defendant's Motion to Dismiss the Indictment, For Discovery, and For an Evidentiary Hearing

magistrate has already harmed his defense. Holding Mr. Rojo-Llamoza in ICE detention for 45 days before filing an indictment violated his speedy trial right under both the Sixth Amendment to the U.S. Constitution and the Speedy Trial Act. Codified in 18 U.S.C. 3161(b). Thus, the only appropriate remedy to achieve deterrence of the government's conduct in future cases is a dismissal with prejudice.

> **B.    The 46-day delay in charging and bringing Mr. Rojo-Llamoza before a magistrate judge violated Rule 5 and the Fourth Amendment, requiring dismissal or, alternatively, suppression of evidence.**

Federal Rule of Criminal Procedure 5(a) mandates that, following a warrantless arrest, the government must promptly file a complaint and then bring the defendant "without unnecessary delay before a magistrate judge." Similarly, the Fourth Amendment requires that persons subject to warrantless arrests "must promptly be brought before a neutral magistrate for a judicial determination of probable cause." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991). The government violates these principles when it holds someone in immigration detention for the purpose of prosecuting that individual in federal criminal court. Here, the 46-day delay in bringing Mr. Rojo-Llamoza before a magistrate judge was an egregious violation that requires dismissal of the indictment, or, alternatively, suppression of evidence obtained through the illegality.

> **1.    The arresting agency violated Rule 5 by failing to promptly charge Mr. Rojo-Llamoza or present him to a magistrate judge without unnecessary delay.**

>> **a)    Rule 5 prohibits unreasonable delay in charging arrested individuals and bringing them before a magistrate judge.**

In the case of a warrantless arrest, Rule 5(a) requires that the arresting law enforcement official "must take the defendant without unnecessary delay before a magistrate judge," and Rule

5(b) requires that a complaint "must be promptly filed in the district where the offense was

allegedly committed." Fed. R. Crim. Proc. 5; *United States v. Gowadia*, 760 F.3d 989, 993-94

(9th Cir. 2014).[2] Rule 5(a) requires a defendant's presentment before a magistrate "as quickly

possible" so that he can be advised of his rights and probable cause can be determined. *United*

*States v. Liera*, 585 F.3d 1237, 1243 (9th Cir. 2009). This presentment requirement is designed

to "foreclose Government overreaching" by ensuring that a magistrate judge has the opportunity

to promptly "inform[] the defendant of the charges against him, his right to remain silent, his

right to counsel, the availability of bail, and any right to a preliminary hearing." *Corley v. United*

*States*, 556 U.S. 303, 320 (2009).

      Rule 5's standards of "promptness" and prohibiting "unnecessary delay" are fact-specific

inquiries. *United States v. Pimental*, 755 F.3d 1095, 1100-01 (9th Cir. 2014). Factors that courts

consider include transportation logistics, the distance from the site of the arrest to a magistrate,

and the availability of a magistrate. *Id.* at 1101. The Ninth Circuit has also considered "'delays

necessary to determine whether a suspect should be criminally charged.'" *Id.* (quoting *United*

*States v. Valenzuela-Espinoza*, 697 F.3d 742, 752 (9th Cir. 2012)). This means time needed to

determine whether an individual *can* be charged with a crime, not to facilitate an assessment of

whether the prosecutor's office will "accept" a case for prosecution. *Valenzuela-Espinoza*, 697

F.3d at 752-53; *see also United States v. Gamez*, 301 F.3d 1138, 1143 (9th Cir. 2002) (explaining

---

[2] 8 U.S.C. § 1357(a)(4) imposes the same obligation when an immigration officer makes a warrantless arrest for a felony violation of the federal criminal laws "regulating the admission, exclusion, expulsion, or removal of aliens."

that delay was reasonable where it "was impossible to determine with what kind of offense Gamez would be charged" prior to questioning by Spanish-speaking agents).

Courts have found that delays of mere hours and days can violate Rule 5. For example, the Ninth Circuit in *Pimental* concluded that an eight-hour delay in filing a complaint following a warrantless arrest and four-day delay in bringing the defendant before a magistrate judge amounted to a Rule 5 violation. *Id*. at 1101-04. In that case, U.S. Customs and Border Patrol (CBP) officers arrested the defendant after discovering a large amount of marijuana in his vehicle. *Id*. The court concluded that neither the distance to the courthouse (17 miles), nor any kind of transportation logistics, justified the delay in charging the defendant or bringing him before a magistrate judge. *Id*. at 1101. Importantly, the court determined that the delay could not be justified by a need to determine whether the defendant could be charged because the officers had enough information to file a complaint long before they filed it. *Id*. A law enforcement officer's "desire to fully investigate [a] crime . . . [is] not a valid reason to delay presenting [a defendant] to a magistrate judge." *Id*.

Likewise, in *Liera*, the Ninth Circuit held that a 30-hour delay in arraigning the defendant violated Rule 5 where that time was used to gather more evidence to facilitate prosecution. 585 F.3d at 1243. There, the government waited to bring the defendant before a judge 15 miles away so that they could interview him a second time even though "the government had more than enough information to determine whether [the defendant] should be criminally charged." *Id*.; *see also Valenzuela-Espinoza*, 697 F.3d at 746-47, 753 (delay of approximately 27 hours violated Rule 5); *United States v. Mayes*, 417 F.2d 771, 772 (9th Cir. 1969) (delay of less than 24 hours violated Rule 5).

Page 17  Defendant's Motion to Dismiss the Indictment, For Discovery, and For an Evidentiary
         Hearing

b)    The arresting officers failed to promptly charge Mr. Rojo-Llamoza or bring him before a magistrate judge without unnecessary delay.

Here, the arresting officers violated Rule 5 by detaining Mr. Rojo-Llamoza for 45 days before charging him and 46 days before presenting him to a magistrate judge. ECF 1, 6. No logistical concerns justified the delay. Mr. Rojo-Llamoza was arrested on February 2, 2025, near his residence in Portland, Oregon, just ten miles from the Hatfield United States Courthouse.[3] That is closer to the point of arrest than either *Liera* or *Pimental*. Yet Mr. Rojo-Llamoza was transported *away* from the federal courthouse to a different state and remained in ICE detention for a month and a half before finally making his initial appearance before a magistrate judge in Portland on March 20, 2025.

Nor was delay justified by any need to determine whether Mr. Rojo-Llamoza could be charged. The government had the I-213 report documenting the alleged assaults on the ICE agents from the day that Mr. Rojo-Llamoza was arrested. Exhibit A. The agents made their claims to the Department of Labor within days thereafter. Exhibit E. Any one of the agents could have sworn an affidavit for an arrest warrant for a criminal complaint the same day as Mr. Rojo-Llamoza's arrest. A law enforcement officer's "desire to fully investigate [a] crime . . . [is] not a valid reason to delay presenting [a defendant] to a magistrate judge." *Pimental*, 755 F.3d at 1102. The delay was unjustified.

---

[3] Driving Directions from Mr. Rojo-Llamoza's residence to 1000 SW 3rd Ave, Portland, OR, GOOGLE MAPS, http://maps.google.com.

        c)      Rule 5 applied to Mr. Rojo-Llamoza's immigration arrest because the government used his arrest and detention as a means of detaining him until criminal charges were brought.

The same reasoning courts have applied in speedy trial cases is true of Rule 5. *United States v. Sotoj-Lopez*, 603 F.2d 789, 790-91 (9th Cir. 1979) (holding that Rule 5(a) applies to noncitizens in immigration detention for purposes of facilitating both their criminal prosecution and their deportation). Courts have held that Rule 5(a)'s presentment requirement applies when immigration authorities arrest a noncitizen for both immigration proceedings and anticipated criminal charges. *Sotoj-Lopez*, 603 F.2d at 790-91. The *Sotoj-Lopez* court rejected the government's argument that a person in custody pending deportation proceedings does not have a right to be brought promptly before a judge for expected criminal charges:

> Nothing in [the INA] purports to deprive an alien who is detained on a criminal charge, *or against whom criminal charges are going to be lodged*, in addition to any deportation proceedings that may be conducted against him, of his rights secured by Rule 5(a) of the Federal Rules of Criminal Procedure and the McNabb-Mallory Rule. On the contrary, [the INA] relaxed Rule 5(a) only for the examination of an alien's right to remain in the United States.

*Id*. (emphasis added); *see also United States v. Cabral*, No. C.R.98-10188-MLW, 1998 WL 1543567, at *1 (D. Mass. June 10, 1998) (finding a Rule 5 violation where the immigration arrest "was from its inception criminal, not civil [because] [t]he INS treated the arrest as civil as a means of detaining the defendant until criminal charges were brought").

To determine if Rule 5 rights are triggered by a purportedly civil arrest, courts look to what actions were taken after the arrest. Actions taken to further the criminal prosecution, like obtaining fingerprints, providing *Miranda* warnings, and referring a case for prosecution, will weigh in favor of a finding that the initial arrest was a criminal arrest. *See, e.g.*, *Cabral*, 1998

WL 1543567, at *5-6 (holding immigration arrest was for criminal prosecution because of actions taken to further prosecution while no actions were taken to accomplish the defendant's deportation); *United States v. Restrepo*, 59 F. Supp. 2d 133, 134-38 (D. Mass. 1999) (same).

The procedural facts of the instant case are similar to those in *Sotoj-Lopez*. In *Sotoj-Lopez*, INS agents raided an onion plant in Oregon looking for undocumented individuals. *Sotoj-Lopez*, 603 F.2d at 790. When agents came across Mr. Sotoj-Lopez he fled, and a scuffle ensued between Mr. Sotoj-Lopez and one INS agent. *Id*. Mr. Sotoj-Lopez struck the agent's chin with a knife and the agent struck Mr. Sotoj-Lopez with a flashlight or a stick. *Id*. The Court noted that the INS agent arrested Mr. Sotoj-Lopez for the immigration violation and "purportedly arrested him for assault with a deadly weapon as well." *Id*. Ultimately, the court concluded that Rule 5(a) applies to noncitizens charged with non-status offenses reasoning that a civil immigration arrest under 8 U.S.C. § 1357(a)(2) cannot deprive a noncitizen "who is detained on a criminal charge, or against whom criminal charges are going to be lodged, in addition to any deportation proceedings that may be conducted against him, of his rights secured by Rule 5(a) of the Federal Rules of Criminal Procedure[.]" *Id*. at 790-91.

This case is on all fours with *Sotoj-Lopez*. Agents went to arrest Mr. Rojo-Llamoza with a civil immigration warrant of arrest they had completed, but during the encounter the agents alleged that Mr. Rojo-Llamoza assaulted them. The agents outlined the facts underlying the assault in detail in the I-213 report they drafted on the date of Mr. Rojo-Llamoza's arrest. Exhibit A. Just as in *Sotoj-Lopez*, ICE agents had all of the information necessary to pursue prosecution upon arresting Mr. Rojo-Llamoza and used his immigration arrest for purposes of criminal

prosecution rather than to effectuate his removal. Thus, under *Sotoj-Lopez*, Rule 5 required that Mr. Rojo-Llamoza being promptly charged and brought promptly before a judge.

>  2. **The government's prolonged pre-indictment delay violated Mr. Rojo-Llamoza's Fourth Amendment right to a prompt judicial determination of probable cause.**

The Fourth Amendment's protection against unfounded invasions of liberty requires that the government "provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest." *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975). Accordingly, persons subject to warrantless arrests "must promptly be brought before a neutral magistrate for a judicial determination of probable cause." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991) (citing *Gerstein*, 420 U.S. at 114).

A judicial determination of probable cause within 48 hours of arrest presumptively complies with *Gerstein*'s promptness requirement. *McLaughlin*, 500 U.S. at 56. If 48 hours pass without a probable cause determination, the burden shifts to the government to prove the existence of an emergency or some extraordinary circumstance justifying the delay. *Id.* at 57. A delay "for the purpose of gathering additional evidence to justify the arrest" is not reasonable. *Id.* at 56.

In *United States v. Contreras*, the court held that the government unreasonably failed to seek a judicial determination of probable cause within 48 hours where the defendant spent 35 days in a county jail before the government brought him before a federal magistrate judge. 197 F. Supp. 2d 1173, 1173-74, 75-78 (D. Iowa 2002). The defendant in *Contreras* was arrested by a state drug task force. While being held in custody with no pending charge, the defendant

admitted to being in the country without authorization, which prompted the imposition of an Immigration and Naturalization Service (INS) hold. *Id*. at 1176. Although the defendant "gave up his right to an immigration hearing, and acknowledged he would be held in detention until his deportation," the court held that the government had not offered any "plausible explanation" for the delay in bringing him before a magistrate judge for a probable cause determination. *Id*. at 1176-77.

Here, the 45-day delay between Mr. Rojo-Llamoza's arrest and the grand jury's determination of probable cause through the indictment violated the Fourth Amendment. As *Contreras* makes clear, the fact that Mr. Rojo-Llamoza was also subject to removal does not change his entitlement to a prompt probable cause determination.

### 3. The Rule 5 and Fourth Amendment violations should result in dismissal of the indictment or, alternatively, suppression of evidence.

Ordinarily, suppression of evidence is the remedy for violations of the Fourth Amendment and Rule 5. However, dismissal is available where the violation is egregious or where necessary to deter future violations. The Court should grant dismissal here.

The Ninth Circuit first contemplated dismissal of an indictment for a Rule 5 violation in *United States v. Jernigan*, a case out of this district. 582 F.2d 1211, 1213-14 (9th Cir. 1978). In *Jernigan*, the government obtained an indictment and a bench warrant for the defendant on Tuesday, May 24, 1977, but made no attempt to arrest Mr. Jernigan until that Friday at 3:30 p.m., just before the Memorial Day weekend. *Id.* at 1213. The officer testified that this was the soonest he was able to get assistance to make the arrest. *Id.* Rather than taking Mr. Jernigan to court, just a few blocks away, the officer contacted the U.S. Marshals, who instructed him to take Mr. Jernigan to the local jail. *Id.* When Mr. Jernigan asked to go to court so he could seek bail,

Page 22  Defendant's Motion to Dismiss the Indictment, For Discovery, and For an Evidentiary Hearing

the agent told him he would be in jail until Tuesday and "would have the long weekend to think about the matter." *Id.* While the Ninth Circuit declined to grant dismissal for the Friday-to-Tuesday delay in presenting Mr. Jernigan to the magistrate judge, it warned that similar violations would be treated more harshly in the future: "We deplore this kind of behavior, and its repetition may lead us to invoke the drastic remedy, dismissal of the indictment, that Jernigan asks us to invoke." *Id.* at 1214.

Relying on *Jernigan*, the district court in *United States v. Osunde* deemed dismissal the appropriate remedy for an egregious Rule 5 violation. 638 F. Supp. 171, 176-77 (N.D. Cal. 1986). In *Osunde*, the government arrested the defendant on December 4, 1985, when he attempted to enter the United States under a fake identity. *Id.* at 172. Although he identified himself as a United States citizen at the airport, subsequent investigation showed he was a native of Nigeria. *Id.* On March 21, 1986, 106 days after his arrest, a criminal complaint was filed charging him with falsely representing himself to be a U.S. citizen and falsifying a fact on a passport. *Id.* at 173. The district court found this to be a "flagrant" Rule 5 violation and granted dismissal. *Id.* at 176-77 ("The 106–day delay which occurred in the matter at bar would appear to present the appropriate facts warranting dismissal."); *see also United States v. Dominguez-Caicedo*, 40 F.4th 938, 951 (9th Cir. 2022) (discussing *Jernigan* and *Osunde* and noting that dismissal is a remedy "for particularly egregious violations of Rule 5 where other remedies are not available"). Just as in *Osunde*, the Rule 5 violation here was egregious. Typically, the "delay[s] addressed by courts under . . . Rule 5(a) . . . are delays of hours and days," *Osunde*, 638 F. Supp. at 176. Mr. Rojo-Llamoza was detained for forty-five days.

Page 23  Defendant's Motion to Dismiss the Indictment, For Discovery, and For an Evidentiary Hearing

Additionally, federal courts have inherent supervisory powers to order dismissal of prosecutions "to implement a remedy for the violation of a recognized statutory or constitutional right" and "to deter future illegal conduct." *United States v. Matta-Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995). Here, the government's Rule 5 and Fourth Amendment violations undermined critical constitutional safeguards for criminal defendants. *See Pimental*, 755 F.3d at 1103-04 (Rule 5 protections are designed to "avoid all the evil implications of secret interrogation" and to ensure that a judicial officer promptly advises defendants of their constitutional rights and resolves the issue of probable cause"); *United States v. Mejia Hernandez*, No. CR 18-0588 FMO; 2020 WL 1181495, at *13-14 (C.D. Cal. Feb. 20, 2020) (ICE's practice of holding criminal defendants to circumvent criminal procedural protections "may result in the violation of the alien's rights under the Constitution").

Dismissal is an appropriate deterrent measure in this case. Deterrence in the immigration context is especially important in light of the prevalence of criminal prosecutions for immigration offenses and the fact that "federal immigration officers and federal prosecutors work together closely to facilitate criminal prosecutions of [noncitizens]." *Zavala v. Ives*, 785 F.3d 367, 372 (9th Cir. 2015). In fiscal year 2023, immigration cases made up more than 19,000—or approximately 38%—of criminal prosecutions.[4] ICE and its sibling agencies within the Department of Homeland Security (DHS) are vital to the USAO's ability to prosecute those cases, collectively referring over 23,000 criminal cases in Fiscal Year 2023. *Id*. at 16. Accordingly, thousands of noncitizens' rights are at stake.

---

[4] U.S. Dep't of Just., U.S. Att'ys Ann. Stat. Rep. 11-12 (2024).

Alternatively, if dismissal is not granted, the Court should prevent the government from using in its criminal prosecution statements taken from Mr. Rojo-Llamoza during the time he was held in violation of Rule 5(a) and the Fourth Amendment.

## IV.    Motion for Discovery

Mr. Rojo-Llamoza moves this court for an order to compel disclosure of:

1) any and all communications, including emails, letters, text messages, memorandums, or voicemails between any immigration authority and any member of the United States Attorney's Office or their agents regarding Mr. Rojo-Llamoza from the moment immigration officials were informed of Mr. Rojo-Llamoza's presence through the date of his arraignment on the Indictment.

2) any and all communications, including emails, letters, text messages, memorandums, or voicemails amongst any and all immigration authorities and their agents regarding Mr. Rojo-Llamoza from the moment immigration officials learned of Mr. Rojo-Llamoza's presence through the date of his arraignment on the Indictment.

3) DOJ and DHS policies, internal memorandum, procedures, or any rules regarding ICE deportations from the United States for Venezuelan citizens. This includes, but is not limited to, policies pertaining to the procedures for deportation from the Tacoma, Washington, Immigration Detention Facility, policies detailing steps taken to effectuate a removal when a final order of removal has been entered, policies detailing the procedures for referring a case for criminal prosecution,

policies detailing whether ICE can hold an individual for the purposes of

prosecution, even after an order of deportation has been entered and if so, how

long ICE can hold someone for purposes other than deportation.

Under the framework of Rule 16, materiality is synonymous with relevance under

Federal Rule of Evidence 401. *See United States v. Stever*, 603 F.3d 747, 753 (9th Cir. 2010)

(evidence was material to defense because it was relevant under Rule 401); *United Sates v.

Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (Rule 16 permits discovery that is 'relevant to the

development of a possible defense.'"); *see also United States v. John Doe*, 705 F.3d 1134

(2013); *United States v. Budziak*, 697 F.3d 1105, 1111 (9th Cir. 2013). In *Doe*, the Ninth Circuit

reversed the denial of discovery for government records of "any meeting or communication, or

planned meeting or communication, between" the defendant and law enforcement agents,

holding that the request was relevant to the defense of entrapment and not overbroad. *Id*. at 1150-

51. Where a defendant has demonstrated the materiality of the information sought, a court may

not merely defer to government assertions that discovery would be fruitless. *Budziak*, 697 F.3d at

1113. To be material, evidence need not be exculpatory; inculpatory evidence is also material.

*United States v. Fort*, 472 F.3d 1106, 1108, 1110 (9th Cir. 2007) (inculpatory police reports were

documents within possession and custody of federal prosecutor and were material to defense

under Rule 16(a)(1)(E)).

Here, communications between the various immigration agencies and their agents, and

between ICE and the United States Attorney's Office are material to Mr. Rojo-Llamoza's

defense that his arrest by immigration authorities triggered the protections of the Speedy Trial

Act, Rule 5, and the Fourth Amendment because the arrest was for the purpose of or used to

further his criminal prosecution. Because this information is material to Mr. Rojo-Llamoza's motion to dismiss the indictment, the communications are discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963).

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. There are three components to a *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, (1999).

The Ninth Circuit has held that *Brady* applies to motions to suppress evidence. *See United States v. Gamez-Orduño*, 235 F.3d 453, 461 (9th Cir. 2000) (asking whether "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different"). In *Gamez-Orduño*, the defendants filed a motion to suppress evidence seized from a trailer. *Id*. In response, the government argued that the defendants lacked Fourth Amendment standing because they were trespassers in the trailer. *Id*. At the suppression hearing, it became apparent that the prosecution possessed a report supporting the defendants' arguments that they were guests in the trailer—not trespassers. *Id*. The district court held that the report was material under *Brady*, ordered the report to be provided to the defense, and set over the hearing to cure the *Brady* violation. *Id*. at 461-62. In upholding the district court's findings, the Ninth Circuit held that "[t]he suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the

Page 27  Defendant's Motion to Dismiss the Indictment, For Discovery, and For an Evidentiary Hearing

evidence been disclosed, the result of the proceeding would have been different." *Id.* (emphasis

added) (quoting *Brady*, 373 U.S. at 87); *United States v. Barton*, 995 F.2d 931, 933-34 (9th Cir.

1993).

      *Gamez-Orduño* demonstrates that *Brady* disclosure obligations apply to the pretrial

motion context when there is a "reasonable probability" that disclosure would affect the outcome

of the proceeding. Mr. Rojo-Llamoza's current discovery does not contain information showing

when the prosecutor's office learned of his detention by ICE, when ICE communicated to the

USAO that they had Mr. Rojo-Llamoza in their custody, or when any government official chose

to pursue criminal prosecution. The communications between immigration authorities and the

prosecution are material to the determination of whether and when ICE's arrest triggered the

procedural protections outlined in this motion. The defense is also missing information about

what, if any, steps were taken to effectuate Mr. Rojo-Llamoza's removal; what procedures are

supposed to be followed to effectuate a removal; whether those procedures change if someone is

going to be prosecuted; and any information about the timeline between arrest and indictment.

Indeed, in *Cabral*, the court reviewed the policies and practices by ICE agents related to

recommending criminal prosecution and the policies of the U.S. Attorney's Office which set

forth certain criteria to determine whether a proposed case should be filed to find dismissal was

warranted. 1998 WL 1543567 at *4-5. If the defense is correct that Mr. Rojo-Llamoza was

unlawfully detained in ICE custody for purposes of prosecution, the remedy is dismissal. A

dismissal clearly affects the outcome of this criminal proceeding.

V.      **Motion for Evidentiary Hearing.**

Mr. Rojo-Llamoza asks that this Court conduct an evidentiary hearing on this motion to determine the intent and good faith of Mr. Rojo-Llamoza's arrest and month-and-a-half-long detention. When a motion rests on factual determinations, courts must make factual findings by Federal Rule of Criminal Procedure 12. *See United States v. Prieto-Villa*, 910 F.2d 601, 606-10 (9th Cir. 1990). Since "suppression hearings are often as important as the trial itself," *id*. at 609-10 (quoting *Waller v. Georgia*, 467 U.S. 39, 46 (1984)), these findings must be supported by evidence taken at an evidentiary hearing, not merely an unsubstantiated recitation of purported evidence in the government's pleading.

VI.     **Conclusion**

For the foregoing reasons, Mr. Rojo-Llamoza requests dismissal of the indictment because the government violated his speedy trial right under the Sixth Amendment and Speedy Trial Act, his procedural rights under Rule 5 of the Federal Rules of Criminal Procedure, and his Fourth Amendment right to a timely probable cause determination.

Dated: August 26, 2025

*/s/ Anna Belesiotis*
Anna Belesiotis, CA 272710
Assistant Federal Public Defender
Attorney for Mr. Rojo-Llamoza