SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SARAH BARR, WSB #40758**
Sarah.Barr@usdoj.gov
**KATE A. ROCHAT, OSB #184324**
Kate.Rochat@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:25-cr-00114-SI |
| v. | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS, ECF No. 17 |
| CESAR ANDRES ROJO-LLAMOZA, | |
| Defendant. | |

Defendant moves to dismiss the indictment, arguing government process after his civil immigration arrest violated the Speedy Trial Act, Federal Rule of Criminal Procedure 5 and the Fourth Amendment. But that arrest was civil, not criminal. There was no violation of these rules that govern criminal arrests. When he was later indicted for separate criminal conduct and then arrested on a criminal warrant associated with that indictment, he was brought to a magistrate judge the day of his arrest. The government complied with the statute, rule, and constitution. The Court should deny this motion.

Defendant also moves to compel discovery of internal communications between ICE and the U.S. Attorney's Office (USAO), as well as various alleged internal DOJ and DHS policies,

memorandum, procedures and rules. The information sought does not meet discovery disclosure rules. The Court should reject defendant's attempted fishing expedition.

Finally, defendant's motion for an evidentiary hearing should be denied because he falls far short of the definite and nonconjectural showing required to merit one.

## BACKGROUND

Defendant is a citizen of Venezuela. ECF No. 17-1 at 1. On April 11, 2024, he illegally entered the United States near Bridge of Americas, Texas and was removed via expedited removal. *Id*. at 2. Less than two months later, he tried again—this time in California. *Id*. He was caught May 29, 2024, having just illegally entered near San Ysidro, California. *Id*. He was again placed in expedited removal proceedings. *Id*. This time, he claimed a fear of returning to Venezuela. *Id*. Immigration officials found he had a credible fear of return and referred him into regular removal proceedings in immigration court. *Id*. On September 10, 2024, an immigration judge ordered him removed from the United States to Venezuela. *Id*.; *see also* Gov't Exhibit A.

Because Venezuela was not accepting deportees, Immigration and Customs Enforcement (ICE) could not execute his removal and released him on an order of supervision (OSUP) as an alternative to detention (ATD). ECF No. 17-1 at 2; *see also* Gov't Exhibit B at 1, 6 (noting that Venezuela was not accepting deportees from the United States, noting deal to take deportees struck in January 2025 and resumption of deportation flights); *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (creating framework for determining an alien's release pending removal where there is "no significant likelihood of removal in the reasonably foreseeable future"); *see also* ECF No. 17-2 at ¶ 1 (defendant's declaration acknowledging that he was ordered removed and then released on supervision).

In January 2025, the U.S. government struck a deal with Venezuela to accept Venezuelan deportees from the United States. Gov't Exhibits B at 6, C. On January 26, 2025, the ICE Portland, Oregon field office received a list from ICE headquarters of aliens with final orders of removal whose orders could be executed. ECF No. 17-1 at 2. Defendant's name was on the list. *Id.*

On February 2, 2025, ICE issued a Warrant of Arrest, Form I-200, in order to take defendant into custody to execute his removal order. *Id*. at 3; *see also* Gov't Exhibit C. A warrant of removal had already been issued. Gov't Exhibit E. That same day, ICE officers found defendant at his apartment building, confirmed his identity, told him he was under arrest, and placed his hands behind his back to apply handcuffs. ECF No. 17-1 at 3. When one of the officers applied a cuff to defendant's right hand, defendant began swinging his arms to break free. *Id*. Defendant ignored commands to stop resisting and continued swinging, causing three officers to fall to the ground. *Id*. He stopped when he saw one of the officers prepare a taser device.[1] *Id*.

The officers took him to the Portland ICE field office to process the immigration arrest. *Id.* When they arrived, the officers booked him in, which involved fingerprinting him and asking basic administrative questions. *Id.* at 1-3; *see also* Gov't Exhibit F. He was booked under the charge "8 USC 1182 – Alien Inadmissibility Under Section 212."[2] Gov't Exhibit B at 2. He was then transported to the immigration detention facility in Tacoma, Washington "for further

---

[1] The taser was not deployed.
[2] Meaning, inadmissible for purposes of immigration proceedings under Section 212 of the Immigration and Nationality Act (INA).

**Government's Response to Motion to Dismiss**                                                                           **Page 3**

action" on his removal case consistent with his "bag and baggage" disposition.[3] ECF No. 17-1 at 1, 4. Defendant agrees these things happened. ECF No. 17-2 at ¶¶ 11-12.

All three officers sustained injuries from defendant's actions during the arrest. Gov't Exhibit G (photos). The injuries include abrasions, contusions, and back and elbow strain. ECF No. 17-3 at 1, 3; 17-4 at 1. On March 4, 2025, an ICE officer sent an email to the USAO alerting the USAO to the incident as a possible charge under 18 U.S.C. §111. Gov't Exhibit H.

On March 18, 2025, a federal grand jury indicted defendant on three counts of assaulting a federal officer in violation of 18 U.S.C. §§ 111(a)(1), (b). ECF No. 1. The next day, an associated criminal arrest warrant was issued. ECF No. 9. Defendant was arrested on that criminal warrant the following day, March 20, 2025. *Id*. He made his first appearance and was arraigned before a magistrate judge that same day. ECF No. 6.

Defendant has now moved to dismiss his indictment, claiming Speedy Trial Act, Rule 5, and Constitutional violations. No such violation occurred. This Court should deny his motion.

## ARGUMENT

### A. Defendant's civil arrest does not implicate the Speedy Trial Act.

Defendant argues that his immigration arrest triggered the Speedy Trial Act because "the facts underlying his charged assault" occurred then. ECF No. 17 at 9. He cites no authority for the idea that criminal conduct occurring during a civil warrant-based arrest converts that arrest into a criminal one. He argues the immigration arrest was just a ruse to circumvent the Speedy Trial Act. *Id*. at 9. That argument is unfounded on both the facts and the law.

---

[3] "Bag and baggage" refers to the notice and process of executing the physical removal of an alien subject to a final order of removal. *See e.g*., *Singh v. Gonzales*, 494 F.3d 1170, 1172 n.3 (9th Cir. 2007).

**Government's Response to Motion to Dismiss**                                                                                           **Page 4**

Defendant concedes that the ICE officers sought to arrest him on an immigration warrant to execute his immigration-judge issued final order of removal. ECF No. 17 at 6-7 (defendant's description of facts). Nevertheless, he argues that the Speedy Trial Act triggered because, in his view, as soon as the officers were assaulted during that civil arrest,[4] they "had all the information they needed to bring criminal charges" and "no additional investigation was needed." *Id*. at 12. In his view, detaining him for immigration purposes violated the Speedy Trial Act.

It doesn't. Not all arrests trigger federal statutory speedy trial rights. 18 U.S.C. § 3161(b); *United States v. MacDonald*, 456 U.S. 1, 6 (1982). An indictment charging "the commission of an offense" must be filed within thirty days of the date the person "was arrested . . . in connection with" the charge for that offense. 18 U.S.C. § 3161(b); *United States v. Cepeda-Luna*, 989 F.2d 353, 355 (9th Cir. 1993). "Offense" means "any Federal *criminal* offense." *Cepeda-Luna*, 989 F.2d at 355 (citing 18 U.S.C. § 3172(2)) (emphasis in original). An arrest for other reasons triggers speedy trial rights only when the arrest is a ruse "to detain a defendant for later criminal prosecution." *Cepeda-Luna*, 989 F.2d at 357.

A ruse is narrowly defined. There is no ruse when the initial arrest by another entity or on another basis is not "a mere formality" but constitutes "a valid" independent reason to detain. *United States v. Ortiz-Lopez*, 24 F.3d 53, 55 (9th Cir. 1994); *see also United States v. Benitez*, 34 F.3d 1489, 1495 (9th Cir. 1994) (no ruse where the state intends to proceed with its prosecution if the federal authorities did not file charges); *Cepeda-Luna*, 989 F.2d at 356 (no speedy trial violation where "initial detention [is] wholly unrelated to the criminal charges contained in the [later] indictment"); *United States v. Cordova*, 537 F.2d 1073, 1075–76 (9th Cir. 1976) (state

---

[4] He appears to contest that the assault happened—claiming the officers were the aggressors, not him—but that is a factual dispute going to the element of the charge, not a matter relevant to this motion to dismiss.

**Government's Response to Motion to Dismiss**                                                                 **Page 5**

arrest for state offense is not a federal arrest even if for the same conduct because separate sovereignty allows both prosecutions and there was no indication that the state action constituted "a mere temporary device" used to restrain appellant until federal authorities might choose to prosecute) (internal quote omitted).

Moreover, dismissal is appropriate on a ruse claim only where the actions of the federal government and arresting entity are "intended to bypass the Speedy Trial Act." *United States v. Burgueno*, 124 F.3d 213 (9th Cir. 1997); *see also United States v. Pena-Carrillo*, 46 F.3d 879, 883 (9th Cir. 1995) ("Charges should only be dismissed where prolonged [other-entity] detention is the result of collusion or ruse between prosecutors and the [other entity], designed to bypass the Speedy Trial Act").

As a result, "no court of appeals has afforded a criminal defendant relief under the Speedy Trial Act based on a ruse exception." *United States v. Leonides-Seguria*, 134 F.4th 968, 973 (7th Cir. Apr. 18, 2025) (citing cases). That was true in *Cepeda-Luna*. There, the Ninth Circuit "refus[ed] to apply the provisions of the Speedy Trial Act to civil deportation detentions." *Cepeda-Luna*, 989 F.2d at 358. It opined a ruse exception "could be applied" to civil immigration arrests when there is evidence that authorities colluded to administratively detain the defendant "solely for the purpose of bypassing the requirements of the Speedy Trial Act." *Id.* at 357. But it found "no evidence" "of government bad faith which would require a 'message' to deter future capricious conduct." *Id*. And, it suggested the appropriate process for seeking relief from extended immigration detention was through habeas corpus proceedings, not Speedy Trial Act challenges. *Id.* at 358.

Those principles hold true here. On defendant's own concessions, there is no evidence of a ruse arrest. His immigration arrest was not "a mere formality" but was "a valid" civil arrest that

**Government's Response to Motion to Dismiss**                                                                 **Page 6**

ICE fully pursued by issuing an administrative arrest warrant based on a pre-determined finding that defendant was subject to a final order of removal and a pre-existing warrant of removal, processing him to execute that removal order, and transporting him to the immigration detention facility to do so. Defendant points to no evidence that ICE's actions were intended "to bypass" the Speedy Trial Act; certainly not *solely* for that purpose. The evidence shows ICE's actions were intended to, and did, start effectuating the outstanding immigration judge-issued order of removal. Defendant's assault on the officers when they tried to arrest him gave rise to an independent criminal investigation, based on new facts, but did not convert his valid civil arrest into a ruse.

Defendant's supporting cases do not help him. Neither involved new criminal conduct, giving rise to an entirely different charge, committed during a civil immigration arrest that was grounded in a completed immigration investigation for which the officers had a pre-established administrative warrant.

*United States v. Okuda*, 675 F. Supp. 1552 (D. Haw. 1987) involved a customs inspector observing the defendant commit conduct that simultaneously violated immigration and criminal laws, using a false visa. The defendant was arrested and held in custody for both purposes. *Id*. at 1553. The government filed a criminal complaint for using a false visa three days later, moved to dismiss the complaint 29 days after that, and the defendant was ultimately indicted for using a false visa 34 days after his arrest. *Id*. at 1553-54. *Okuda* asked whether the Speedy Trial clock started the day of the arrest or the day of the arraignment. The answer turned on the "identical" nature of the immigration and criminal charge. *Id*. at 1555 (emphasizing the "identical" elements three times). Because the defendant was "arrested by both I.N.S. and federal agents on the same

**Government's Response to Motion to Dismiss**                                                            **Page 7**

charge, use of a false visa," for which the proof was the same, the clock started the day of his arrest. *Id*.

*United States v. Restrepo*, 59 F. Supp. 2d 133 (D. Mass. 1999), turned on a similar finding. There, immigration officials administratively arrested and detained the defendant for violating immigration law by illegally reentering after deportation. They made no efforts to remove him but instead filed a criminal complaint lodging the identical criminal charge 40 days later. *Id.* at 136. The defendant was arrested on the complaint warrant three days after that and was ultimately indicted 65 days after his arrest. *Id. Restrepo* also turned on the "identical" nature of the civil and criminal offenses that were committed simultaneously. *Id.* at 137. It concluded that "a civil detention by the INS alone does not necessarily trigger the Speedy Trial Act," but "where that period of detention is used primarily or exclusively to develop criminal charges *involving the conduct on which the civil arrest was based*, the time limit established by the Speedy Trial Act begins running on the date of the civil arrest." *Id*. at 137-38 (emphasis added).

The central fact underlying those findings is the simultaneous and identical nature of the civil and criminal offense. ECF No. 17 at 12. Defendant ignores this, stretching to analogize his case to *Okuda* and *Restrepo* by arguing that once the assault was completed against the officers during the arrest, they needed no more information to pursue criminal charges and the Speedy Trial clock began to run. That premise is untenable. First, it is mere speculation that the officers "needed no more information" to pursue criminal charges. Defendant's own version of the facts —which presents a very different narrative—proves that investigation is important in every case to understand the evidence and ensure sufficient proof against alternative theories. Defendant cites no authority that requires officers to make an arrest the moment known or suspected

**Government's Response to Motion to Dismiss**                                                      **Page 8**

criminal activity is completed.[5] Second, that's not what those cases say. *Okuda* and *Restrepo* do not address circumstances, like here, involving a pre-existing civil matter during which the defendant committed new criminal conduct distinct from the basis of the civil matter. Third, the Speedy Trial Act does not turn on whether "more information" is needed. It turns on whether the arrest is "in connection with" the criminal offense. The arrest here was not "in connection with" the criminal offense; it was based on a pre-existing administrative warrant for a civil immigration action.

Defendant's cry of "ruse" has no factual or legal support. This Court should reject it. His civil immigration arrest did not trigger the criminal Speedy Trial Act.

### B. Rule 5 does not apply to civil immigration arrests.

Defendant argues the indictment must be dismissed because his civil immigration arrest violated Federal Rule of Criminal Procedure 5. ECF No. 17 at 15-21. The Ninth Circuit has characterized this argument as "frivolous." *Cepeda-Luna*, 989 F.2d at 358. "The provisions of Rule 5, which require *inter alia* the appointment of counsel and the holding of preliminary examinations, are inapplicable to civil deportation arrests." *Id.*; *see also United States v. Pena-Silva*, 552 F. App'x 632, 634 (9th Cir. 2014) (same); *United States v. Dyer*, 325 F.3d 464, 468 (3d Cir. 2003) (collecting U.S. Circuit Court cases for same); *see also United States v. Pablo-Morales*, No. 3:25-CR-00095-IM-1, 2025 WL 1434994, at *2 (D. Or. May 19, 2025) (same). That ends the matter.

---

[5] This argument sounds in pre-indictment delay. A claim of unconstitutional pre-indictment delay occurring within the statute of limitations requires showing actual prejudice and that the length of delay offends fundamental conceptions of justice. *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007). Defendant has not claimed either. The six-week period between the assault and the indictment does not meet this "heavy burden." *Id.*

**Government's Response to Motion to Dismiss**      **Page 9**

Nonetheless, to circumvent this binding precedent, defendant likens this case to *United States v. Sotoj-Lopez*, 603 F.2d 789, 790-91 (9th Cir. 1979). But that case is different. In *Sotoj-Lopez*, the immigration officials had no civil arrest warrant and were not executing an arrest of Sotoj-Lopez for a civil immigration violation when the assault occurred. They were investigating whether illegal aliens worked at the plant and had just started questioning him to determine if he was illegally present. He tried to flee, causing a scuffle and injuring an officer. He was arrested without a warrant for both violating immigration law and the criminal assault. Later that day he was interviewed at the immigration office and then booked into the local jail; the next day, an FBI agent interviewed him regarding the assault and he made inculpatory statements. Eighteen hours after the criminal interview, he was brought before a magistrate.

Under those circumstances, the government conceded the delay in taking him before a magistrate on the assault charge was unnecessary given case law at the time holding that any "delay must not be of a nature to give opportunity for the extraction of a confession." *Id*. at 790 (citing *Mallory v. United States*, 354 U.S. 449 (1957) (modified by statute as stated in *Corley v. United States*, 556 U.S. 303 (2009)). It argued instead that the pending deportation proceedings nullified the Rule 5 requirement as to the assault charge. *Sotoj-Lopez* rejected that argument for a person who was simultaneously arrested on criminal and immigration charges. *Id*.; *see also Pablo-Morales*, 2025 WL 1434994, at *2 n.1 (D. Or. May 19, 2025) (noting the importance of the simultaneous civil and criminal arrest in *Sotoj-Lopez*). *Sotoj-Lopez* relied on the statute governing warrantless immigration arrests, 8 U.S.C. § 1357(a)(2) (1979), to find such an arrest relaxes Rule 5 for status offenses but does not dispense with the rule for non-status offenses. Because Sotoj-Lopez was simultaneously arrested for both, the Rule 5 requirement still applied to the criminal arrest. *Sotoj-Lopez* does not speak to circumstances where, like here, immigration

**Government's Response to Motion to Dismiss**                                                                                                         **Page 10**

officials were making a warrant-based administrative arrest when defendant committed a new criminal act.

The other cases cited by defendant involved warrantless arrests interpreting that same statute too. *See United States v. Cabral*, 1998 WL 1543567, at *6 (D. Mass. June 10, 1998) (warrantless arrest was "from its inception an arrest for a felony [crime]" given the agent's standard practice to prosecute illegal reentrant aggravated felons and his immediate intent to prosecute the arrestee at the time of arrest); *United States v. Osunde*, 638 F. Supp. 171, 172 (N.D. Cal. 1986) (warrantless arrest by airport customs inspectors on suspicion of false claim to U.S. citizenship, both a civil and criminal offense).

To overcome this problem, defendant again argues Rule 5 is triggered by the officers (purportedly) having "all of the information necessary to pursue prosecution" at the time they arrested him (on the civil warrant). ECF No. 17 at 20. But like in the Speedy Trial context, having "the information necessary to pursue" charges is not the triggering event. The triggering event is a criminal arrest. Those are different things. "[D]elays necessary to determine whether a suspect should be criminally charged" are "reasonable." *United States v. Valenzuela-Espinoza*, 697 F.3d 742, 752 (9th Cir. 2012); *see also United States v. Garcia-Hernandez*, 569 F.3d 1100, 1106 (9th Cir. 2009) (explaining that the presentment rules are "designed to deter police from engaging in lengthy prearraignment detentions for the purpose of further interrogating a defendant" and noting the circuit has "been careful not to overextend" the rule "in cases where there was a reasonable delay unrelated to any prolonged interrogation of the arrestee").

To overcome *that* problem, defendant attempts to import the Speedy Trial Act ruse exception to the Rule 5 context. He cites no court that has done so. *cf.*, *Pablo-Morales*, 2025 WL 1434994, at *2 (noting *Cepeda-Luna* considered a "ruse" exception in the Speedy Trial context,

**Government's Response to Motion to Dismiss**                                                      **Page 11**

not Rule 5). And he has made no evidentiary showing of any ruse in his civil warrant-based arrest.

Defendant's criminal arrest happened when he was taken into custody on the criminal indictment warrant. He was presented to a magistrate the same day as that arrest. There was no Rule 5 violation. The earlier immigration arrest did not convert into a criminal arrest governed by Rule 5 merely because the crime happened during that civil arrest.

### C. Defendant had no Fourth Amendment right to a juridical probable cause finding.

There is no dispute that a person subject to a warrantless criminal arrest must be promptly brought to a neutral magistrate for a judicial determination of probable cause. *See e.g., Gerstein v. Pugh*, 420 U.S. 103 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). But that principle does not apply here.

Here, defendant's immigration arrest was neither warrantless nor criminal. A Form I-200 Warrant of Arrest, which commanded that defendant be "arrest[ed] and take[n] into custody" was issued before his arrest. Gov't Exhibit F. A Form I-205 Warrant of Removal, issued the day of the Immigration Judge's removal order, further commanded that defendant be "take[n] into custody and remove[d] from the United States." Gov't Exhibit D. The arrest was civil, not criminal.

Defendant argues the Fourth Amendment demands he be brought before the magistrate for a probable cause determination within 48 hours of arrest, citing *United States v. Contreras*, 197 F. Supp. 2d 1173 (D. Iowa 2002). But that case too, is different. *Contreras* involved a defendant held for more than a month in county jail without charges after a warrantless arrest by state drug task force officers. The U.S. Marshals and federal immigration officials both placed holds, yet the defendant remained jailed without criminal charges by any state or federal entity or

**Government's Response to Motion to Dismiss**

civil immigration charges. Thirty-one days later, he was indicted on federal drug charges. Four days after that, he was brought before a magistrate. *Contreras* rejected the argument that the ICE hold was enough to excuse the missed Rule 5 and Speedy Trial Act deadlines; for Speedy Trial Act purposes, the missed deadline required mandatory dismissal. *Contreras*, 197 F. Supp. 2d at 1176-77; 1178.

None of that happened here. *Contreras* does not stand for defendant's mischaracterized proposition that a person arrested on a civil immigration warrant is constitutionally "entitled to a prompt probable cause determination." ECF No. 17 at 22.

Defendant was arrested on an administrative immigration warrant to effectuate his removal. ICE had 90 days to remove him. 8 U.S.C. § 1231(a)(1)(A) ("the government shall remove the alien from the United States within a period of 90 days"). Defendant's immigration detention within that 90-day period is thus presumptively lawful. His later criminal arrest on the indictment warrant triggered the Speedy Trial Act, Rule 5, and constitutional presentment requirements. Defendant does not argue the government failed to comply where the clock starts with that event.

This Court should reject defendant's constitutional claim.

### D. Dismissal is not an appropriate remedy.

Dismissal is the "most drastic" remedy, and one that any trial court must approach with "caution and with a view toward balancing the interests involved." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). Here, dismissal would be wildly disproportionate to the alleged misconduct.

Even assuming a Rule 5 or probable cause presentment violation, which there was not, dismissal is not warranted. The district court may only "dismiss an indictment for *egregious*

**Government's Response to Motion to Dismiss**                                                   Page 13

violations of Rule 5." *United States v. Dominguez-Caicedo*, 40 F.4th 938, 950 (9th Cir. 2022) (emphasis added); *see also id.* at 951 (dismissal is limited to "particularly egregious violations of Rule 5 where no other relief is available").

And it may only dismiss an indictment due to government misconduct in securing the indictment under extreme circumstances. First, when the conduct is "so grossly shocking and outrageous as to violate the universal sense of justice," typically involving circumstances of "extreme physical or mental brutality" by law enforcement or a crime that is "manufactured by the government from whole cloth." *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). Second, under the court's supervisory powers (1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct. *Id.* The goal is to "protect[ ] the integrity of the federal courts and prevent[ ] the courts from making themselves accomplices in willful disobedience of law." *Id.* (internal punctuation omitted). It requires a showing of flagrant misbehavior and substantial prejudice. *Id*. at 1031, 1038.

None of that happened here. There was no violation, let alone an "egregious" one constituting "flagrant misbehavior" that is "so grossly shocking and outrageous as to violate the universal sense of justice" or that involves a "willful disobedience of law" requiring this Court's interference to protect judicial integrity. There is no dispute that defendant's final removal order subjected him to civil immigration arrest. The Speedy Trial Act, Rule 5 and constitutional presentment do not apply to such arrests. The record shows he was, in fact, arrested and processed to effectuate his final order of removal, with his arrest on an immigration arrest warrant and his transfer to the immigration detention center for that purpose. Even defendant's

**Government's Response to Motion to Dismiss**                                                    **Page 14**

case finding a Rule 5 violation in warrantless immigration arrests still refused to dismiss the indictment. *Cabral*, 1998 WL 1543567, at *7-10 (D. Mass. June 10, 1998) (finding dismissal inappropriate).

Defendant's motion to dismiss should be denied.

### E.    Defendant's motion for discovery is meritless.

Defendant moves to compel:

- "any and all communications" "between any immigration authority and any member of the United States Attorney's Office or their agents regarding Mr. Rojo-Llamoza from the moment immigration officials were informed of Mr. Rojo-Llsmoza's presence through the date of his arraignment on the Indictment";

- "any and all communications" "amongst any and all immigration authorities and their agents regarding Mr. Pablo-Morales from the moment immigration officials were informed of Mr. Pablo-Morales' presence by local authorities through the date of his arraignment on the Indictment"; and

- "DOJ and DHS policies, internal memorandum, procedures, or any rules regarding ICE deportations from the United States for Venezuelan citizens," including but not limited to policies pertaining to the procedures for deportation from the Tacoma, Washington, Immigration Detention Facility, policies detailing steps taken to effectuate a removal when a final order of removal has been entered, policies detailing the procedures for referring a case for criminal prosecution, policies detailing whether ICE can hold an individual for the purposes of prosecution, even after an order of deportation has been entered and if so, how long ICE can hold someone for purposes other than deportation."

ECF No. 17 at 15-26. He claims this information is material to his defense that "that his arrest by immigration authorities triggered the protections of the Speedy Trial Act, Rule 5, and the Fourth Amendment because the arrest was for the purpose of or used to further his criminal prosecution." *Id.* at 26-27. He cites Rule 16(a)(1)(E) and *Brady* but does not explain how the information sought is material or exculpatory under those authorities. *Id*. He concedes the information is only material "to his motion to dismiss the indictment." *Id.* at 27.

**Government's Response to Motion to Dismiss**                                                           Page 15

The motion should be denied. It fails the materiality test. A defendant is "entitled to the discovery of only those materials that are relevant to the defendant's response to the Government's case in chief" for purposes of now-Rule 16(a)(1)(E). *United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000) (addressing former Rule 16(a)(1)(C)). Such discovery does not encompass "any claim that is a 'sword,' challenging the prosecution's conduct of the case," but rather encompasses "only the narrower class of 'shield' claims, which refute the Government's arguments that the defendant committed the crime charged." *Id.* (citing *United States v. Armstrong*, 517 U.S. 456, 462 (1996) (involving a pre-trial claim of selective prosecution)); *see also United States v. Harold*, 734 F. Supp. 3d 1102, 1114-15 (D. Or. 2024) (Immergut, J.) (discussing *Chon* and *Armstrong*); *Pablo-Morales*, 2025 WL 1434994, at *4 (denying nearly identical motion as the motion made here). Defendant concedes he does not seek this information for a trial defense, but only to fish for information related to the purpose of his detention—which is not an element of, or even relevant to, the charge.

Moreover, the materials sought are exempt from discovery under Rule 16(a)(2), which bars the discovery of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" as well as "the discovery or inspection of statements made by prospective government witnesses" except as provided under the Jencks Act. Further, defendant has not explained how he is entitled to privileged attorney-client communications between ICE and the USAO.[6]

---

[6] Nevertheless, for transparency, the government has attached to this response the email the USAO received from ICE alerting it to the incident. Gov't Exhibit H. The government has also requested and received the DHS A-file, which is being processed for discovery and will be provided to defendant as soon as that processing is complete.

**Government's Response to Motion to Dismiss**     **Page 16**

Similarly, "*Brady* does not establish a duty to provide defense counsel with unlimited discovery of everything known by the prosecutor or permit the defendant to compel production of [evidence] so that [s]he could search through them for anything useful." *United States v. Lucas*, 841 F.3d 796, 808 (9th Cir. 2016) (citing *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986)) (internal quotation marks omitted). "[M]ere speculation about materials in the Government's files' [does] not require the district court to make those materials available." *Lucas*, 841 F.3d at 808 (citing *United States v. Mincoff*, 574 F.3d 1186, 1199-2000 (9th Cir. 2009)) (internal quotation marks omitted). *Brady* does not entitle a defendant to discovery where she cannot "point to any existing favorable evidence to support [her] speculation." *Lucas*, 841 F.3d at 802. Defendant does not claim the information sought is exculpatory.

Defendant relies on *United States v. Gamez-Orduno*, 235 F.3d 453, 455 (9th Cir. 2000) for the idea that "*Brady* disclosure obligations apply to the pretrial motion context when there is a 'reasonable probability' that disclosure would affect the outcome of the proceeding." ECF No. 17 at 28. *Gamez-Orduno* is not so broad. It is explicitly limited to "material evidence helpful to the accused, whether at trial *or on a motion to suppress*" and was found to apply only because the government "withheld [a witness] report while making factual representations inconsistent with it"—a determination the district court made after first reviewing the report in camera. Defendant cites no case extending this rule to motions to dismiss and he cites no known, specific, existing report or document that he believes, like in *Gamez-Orduno*, is a smoking gun at least appropriate for the court to review in camera.

Defendant also does not explain how it is reasonably probable that disclosure of the requested materials would affect the outcome of the proceeding here, given the undisputed evidence that the ICE officers went to arrest him on an administrative immigration arrest warrant

**Government's Response to Motion to Dismiss**                                                                 **Page 17**

to effectuate the undisputed final order of removal. That is, a judge-issued order commanding the U.S. Government's removing entity—the Department of Homeland Security (DHS)—to remove defendant to Venezuela. Gov't Exhibit A. He lists what he perceives is "missing," ECF No. 17 at 28, but does not explain why each of the listed materials matter (or even that they exist), other than to generally conclude that *if* the requested materials show he was "unlawfully detained in ICE custody for purposes of prosecution, the remedy is dismissal." ECF No. No. 17 at 28. For the reasons explained above, dismissal is not the remedy here.

Because the documentary record on its face establishes no ruse, defendant asks to throw his fishing line in a pond of undiscoverable information to see what he might hook. But that pond is frozen by the limits of Rule 16 and *Brady*. He is not entitled to the materials sought. His motion to compel must be denied.

### F.  There is no need for an evidentiary hearing.

A district court has broad discretion in deciding whether to conduct an evidentiary hearing. *United States v. Lazarevich*, 147 F.3d 1061, 1065 (9th Cir. 1998) (affirming denial of evidentiary hearing because it would have required an excessive continuance). An evidentiary hearing is required only when resolution in accordance with the defendant's contentions would entitle him to relief. *United States v. Irwin*, 612 F.2d 1182, 1187 (9th Cir. 1980). This requires the defendant to allege facts sufficient to enable this Court to conclude that relief would be required. *Id*. at 1191; *see also United States v. Evan*s, 796 F.2d 264, 266 (9th Cir. 1986) (affirming denial of motion for evidentiary hearing where, assuming the truth of the allegations, they do not meet the threshold elements of the claim). The allegations must be "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial

claim is presented." *United States v. Packwood*, 848 F.2d 1009, 1010 (9th Cir. 1988). "General or conclusory factual allegations are not enough to require a hearing." *Id.*

Here, defendant does not allege sufficiently definite, detailed, and nonconjectural facts to get an evidentiary hearing. He speculates that ICE must have really arrested him on the civil warrant and held him in immigration detention for the purpose of circumventing the statutory, federal rule, and constitutional promptness requirements for criminal charges since, in his view, ICE had "all the information they needed" to pursue a criminal charge at the time of the civil arrest. But speculation alone is not enough. Moreover, his speculation does not comport with the record, or the law. An immigration judge issued a removal order against defendant, ICE had an arrest warrant to arrest him and a removal warrant to remove him, and ICE had 90 days in which to effectuate his removal. The immigration arrest and detention were legitimate and lawful. ICE did not know defendant would assault them upon arrest. The officers were entitled to execute his civil arrest, and the government was entitled to investigate the assault—which defendant disputes occurred at all—to determine whether the incident called for criminal charges. Defendant's suggestion that a criminal arrest must be made as soon as the government has "the information it needs to bring a charge" flies in the face of the statute of limitations and principles of pre-indictment delay.

And anyway, an evidentiary hearing would not establish the requirements for dismissal because, as discussed above, no additional facts—which would merely color around the facts already in the evidentiary record—could turn this case into an "egregious" one constituting "flagrant misbehavior" that is "so grossly shocking and outrageous as to violate the universal sense of justice" involving a "willful disobedience of law" such that this Court's interference is necessary to protect judicial integrity.

**Government's Response to Motion to Dismiss**            **Page 19**

## CONCLUSION

This Court should deny defendant's motions to dismiss, motion for discovery, and motion for an evidentiary hearing.

Dated: September 22, 2025　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　SCOTT E. BRADFORD
　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　*/s/ Sarah Barr*
　　　　　　　　　　　　　　　　　　　　　SARAH BARR, WSB #40785
　　　　　　　　　　　　　　　　　　　　　KATE A. ROCHAT, OSB #184324
　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorneys